IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CASE NUMBER 9:22-CR-00038-MAC |
| | § | |
| | § | |
| XAVIER JEREL LEONARD | § | |
| | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE
JUDGE ON THE DEFENDANT'S AMENDED MOTION TO SUPPRESS EVIDENCE**

Pending before the undersigned is the Defendant's First Amended Motion to Suppress (doc. #48) filed by the Defendant, Xavier Jerel Leonard.[1]   The United States filed a response to the Defendant's original motion (doc. #47) and his amended motion (doc. #54).  The undersigned magistrate judge heard testimony and oral argument on August 28, 2023.

## I. RELEVANT FACTS

The testimony and evidence presented at the suppression hearing showed that on August 20, 2022, at approximately 5:15 p.m., dispatch received a call regarding a welfare/medical concern for a person located in a residential area near an intersection at Plum and Pineview Street in Crockett, Texas.  Sergeant Nathan Key ("Key") arrived on the scene followed by Sergeant Kerri Bell ("Bell") shortly thereafter.  Bell turned on her body camera upon arrival and saw the Defendant on the ground in distress near a stop sign at the location.  Other civilians were present. The Defendant was wearing only torn boxer short underwear and was sweaty, thrashing around,

---

[1] This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.  *United States v. Raddatz*, 447 U.S. 667, 681-84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B) and E.D. TEX. LOCAL R. CR-59(a).

incoherent, had labored breathing, and smelled like phencyclidine (PCP), a controlled substance. The body camera footage also showed the Defendant rolling around and trying to get up but could only get to his hands and knees while the officers present attempted to protect the Defendant from striking his head on the pavement.  The Defendant did not communicate with anyone.  According to the body camera video, one of the witnesses at the scene saw him fall and thought he was having a seizure, so they called 911 for help. The officers discussed at the scene that the Defendant smelled like PCP and Bell surmised that he was "super high."  Key stated that he had "some type of illegal narcotic overdose."

Deputy Juan Noyola ("Noyola") arrived to the scene and identified the Defendant as Xavier Leonard and recognized his truck in the driveway of a home a few blocks down from the intersection where the Defendant was found.  A neighbor confirmed that the Defendant lived in the home located at 200 North Pineview.  Noyola said that he knew the Defendant because he grew up in that area and had seen him driving that particular vehicle.  Noyola walked to the home, checked the license plate, and checked to see if anyone was inside the vehicle.  It was empty.  The vehicle was parked in the driveway on the side of the home.  Noyola then noticed that the door to the home was cracked open approximately 6-8 inches.  He announced Houston County Sheriff's Office loudly and no one responded.  He radioed to the other officers that the door was partially open to the Defendant's home.  He did not mention seeing anything through the door.

Bell left the scene of the Defendant and walked to the house to assist Noyola.  Noyola is heard reporting back to his station, "We're gonna clear the residence.  Myself and 325" prior to Bell arriving at the home.  On the walk to the house, Bell changed out her latex gloves because she had blood on them and did not want to get blood on her weapon.  Bell testified that, upon arrival, she saw a broken coffee table through the cracked door.  Noyola knocked and they both

announced they were with the police department, then entered the home and looked in every room and closet. While in the home, Bell observed a gun and prescription bottles on the bed, a marijuana plant in a closet, a tent with marijuana plants in it, and bottles that she suspected were associated with a methamphetamine or PCP lab.

After the house was "cleared," Bell prepared an affidavit in support of a search warrant and submitted it to Judge Sarah Clark in Houston County, who authorized a search of the Defendant's home for narcotics, contraband, currency, and firearms based upon Bell's observations of what transpired while with the Defendant and in his home. Bell then executed the search warrant along with other officers and seized numerous items including narcotics, contraband for manufacturing narcotics, cash, phone, vehicle, two firearms, ammunition, and other paraphernalia.

## II. <u>ISSUES PRESENTED</u>

The Defendant argues that the initial entry into his home was unjustified and a violation of his Fourth Amendment rights as it was without consent, without a warrant, and without exigent circumstances. (Docs. #42, #48.) Therefore, the Defendant requests that the court suppress all evidence seized as a result of this unlawful search and any subsequent search and seizure as tainted under the exclusionary rule.

The Government responds that exigent circumstances existed allowing legal entry into the Defendant's home. They also assert that the officers were checking for injured persons in the home under the emergency aid exception and/or conducting a protective sweep for officer safety. The Government further alleges that the entry thereafter provided probable cause for a search warrant to search the home and lawfully seize evidence found in the home. Moreover, the Government asserts that even if the searches are found invalid under the Fourth Amendment, the

good faith exception to the exclusionary rule allows for admission of the evidence obtained during the execution of the warrant.

### III. RELEVANT LAW AND DISCUSSION

The Fourth Amendment protects individuals from unreasonable searches and seizures. It is well-settled law that warrantless entry into a home for the purpose of either arrest or search is prohibited by the Fourth Amendment unless both probable cause and exigent circumstances are present. *Welsh v. Wisconsin,* 466 U.S. 740 (1984); *Payton v. New York,* 445 U.S. 573, 583 (1980); *see also Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."); *United States v. Lewis*, 381 F. App'x 376, 380 (5th Cir. 2010) ("A warrantless entry into a residence is presumed unreasonable unless the officers obtain consent or the entry is justified by both probable cause and exigent circumstances"); *United States v. Newman*, 472 F.3d 233, 236 (5th Cir. 2006) ("A warrantless, unconsented entry into a person's home is presumptively unreasonable under the Fourth Amendment unless supported by probable cause that contraband is inside or that an illegal act is taking place and conducted pursuant to exigent circumstances."); *United States v. Santiago,* 410 F.3d 193, 198 (5th Cir. 2005) ("A warrantless entry into a dwelling is presumptively unreasonable unless consent is given or probable cause and exigent circumstances justify the encroachment.").

The original entry into the home by the officers in this case was done without a warrant. Therefore, the Government has the burden of proving the existence of probable cause and exigent circumstances by a preponderance of the evidence. *United States v. Rodea*, 102 F.3d 1401, 1404 (5th Cir. 1996); *see also United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) ("Where

there is no warrant, the government bears the burden of establishing by a preponderance of the evidence that the challenged search and/or seizure was valid.").

    A.    <u>Probable Cause</u>

Probable cause exists when under the "totality of the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). For example, warrantless entry into a home based upon a reasonable belief that there was an assault in progress and that someone might be in need of assistances satisfied the standard. *See United States v. Flores–Castaneda*, 384 F. App'x 364, 367 (5th Cir. 2010). Also, a telephone call from an informant confirming a marijuana delivery to a home satisfied probable cause to search the mobile home and arrest the occupants. *Rodea*, 102 F.3d at 1404. Another example would be officers' knowledge that a drug dealer frequented the home and saw suspicious movement behind the curtains and observed a resident attempting to flee the premises. *United States v. Aguirre*, 664 F.3d 606, 612 (5th Cir. 2011) (finding the information known to the officers was sufficient to create probable cause where officers were aware of a high probability that persons in the possession of drugs in the home might attempt to destroy them).

In *United States v. Brown*, however, the court found a lack of probable cause where the officers alleged a burglary was occurring but there were no tools, no signs that a burglary occurred inside the home where officers could see into the home through a carport door, there was no movement in the house, they did not hear anyone in the house, the defendant did not appear to be a part of any confrontation, and the only crime that officers had probable cause to believe had been committed inside the residence was the defendant's possession of a marijuana cigarette, which was only a misdemeanor. *United States v. Brown*, 230 F. Supp. 3d 513, 524 (M.D. La. 2017) (finding

the officers had nothing more than unfounded suspicion that any crime had occurred inside the residence).

Likewise, in this case, there was no real evidence of probable cause of a crime inside the Defendant's home—only suspicion of PCP use by the Defendant based upon Bell's testimony that the Defendant appeared intoxicated and smelled of PCP. The Defendant, however, was not found in his home or even on his property. The only evidence that this alleged PCP use may have occurred inside the Defendant's home was his proximity to the home. So, at the time the officers found the Defendant at the intersection, there was likely reasonable suspicion that he was at least publicly intoxicated or under the influence of a controlled substance and perhaps probable cause of such a crime, but not necessarily that this crime occurred in his home.

Moreover, the Supreme Court has held that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." *United States v. Jackson*, No. CR 19-152-JWD-EWD-4, 2023 WL 3175433, at *4 (M.D. La. May 1, 2023) (quoting *Welsh,* 466 U.S. at 753 (finding that warrantless entry into home to arrest for a civil traffic offense was a violation of the Fourth Amendment)). Therefore, "application of the exigent circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense ... been committed." *Id.*

Here, the only probable cause of a crime known to the officers prior to their warrantless search is public intoxication. The undersigned finds the existence of probable cause that a crime occurred *in* the Defendant's home tenuous. Moreover, because "no amount of probable cause can justify a warrantless search or seizure absent exigent circumstances," *Horton v. California*, 496

U.S. 128, 137 n.7 (1990), the undersigned will move on to the analysis of whether an exigent circumstance in this case existed.

> B.    Exigent Circumstances

The exigent circumstances exception applies "where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *Rodea*, 102 F.3d at 1404. Such circumstances may exist if law enforcement officers reasonably fear for their safety, if firearms are present, or if officers need to assist persons who are seriously injured or threatened with serious injury. *Flores Castaneda*, 384 F. App'x at 367.

The determination of exigent circumstances is a factual one looking at the totality of the circumstances. *United States v. Blount*, 123 F.3d 831, 837–38 (5th Cir. 1997). The Fifth Circuit has identified a list of factors in considering whether exigent circumstances existed: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic. *United States v. Rico*, 51 F.3d 495, 501 (5th Cir. 1995). The court should look to the reasonableness of the officers' investigative tactics leading up to the warrantless entry. *Blount*, 123 F.3d at 837–38. An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." *Brigham City, Utah v. Stuart*,

547 U.S. 398, 404 (2006) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)) (finding the officer's subjective motivation is irrelevant).

Here, as to urgency, medical help had already been dispatched to assist the Defendant (who was located away from the home), and there was no reasonable basis to believe there was anyone else in the Defendant's home after the officers asked around and knocked and heard no noise or saw any movement in the home. Also, Officer Bell testified that it took only an hour or two to get the warrant she eventually obtained. The second factor, removal of contraband, is not at issue in this case. There was no reasonable basis to believe there was anyone else in the home to remove contraband, because the Defendant was not in the home and the officers did not see anyone through the cracked door and did not see or hear anyone in the home after knocking and announcing themselves. The only evidence of a possibility that contraband was even in the home was the Defendant's behavior indicating he might be under the influence of a controlled substance. However, the mere presence of drugs alone does not rise to exigent circumstances justifying a warrantless entry and search. *Untied States v. Munoz-Guerra*, 788 F.2d 295, 298 (5th Cir. 1986).

In *Newman*, the Fifth Circuit looked at factor three—danger to the officers guarding the site while a warrant is obtained. *United States v. Newman*, 472 F.3d 233, 238 (5th Cir. 2006) The court found exigent circumstances based on officer safety where the agents knew a drug dealer frequented the house, saw a man flee from the home, saw movement behind a curtain, and were reasonable to believe that the residents were hiding, potentially with weapons, and watching the agents through surveillance cameras. *Id.* Here, this factor is not applicable given the officers' lack of intent to obtain a warrant before their entry into the home. The Defendant was not at his home and did not have possession of any contraband or weapons. The 911 call was for a welfare check for the Defendant who was in distress at an intersection needing medical attention. There were no

reports of criminal activity involving the Defendant or his home.  Because of the Defendant's need for medical attention, it was reasonable for the officers to knock at his home to notify a family member.  However, once the officers knocked and called out and no one answered, that inquiry ended.

The fourth factor addresses people in the home with contraband who are aware the police are on their trail, and the last factor involves the destructibility of contraband.  There was no evidence presented in the briefing or at the suppression hearing as to any information regarding these factors.  The lack of exigent factors, however, does not end the inquiry.  There are other exceptions to the warrant requirement as discussed below.

C.    Emergency Aid Exception

The "emergency aid exception" includes a warrantless entry in order to assist persons who are seriously injured or threatened with such injury.  *Brigham City, Utah,* 547 U.S. at 404.  For the emergency aid exception to apply, an officer must have "an objectively reasonable basis for believing that a person within [the house] is in need of immediate aid." *Id.* at 406.  Unlike the exigent circumstances discussed above, for this exception, the Government is not required to show probable cause—only an objectively reasonable basis.  *See United States v. Cox*, No. SA-16-CR-741-XR, 2017 WL 5588192, at *4 (W.D. Tex. Nov. 20, 2017) (collecting cases) ("This Court's understanding of *Kentucky v. King*, *supra* and *Toussaint*, *supra* indicates that any requirement of probable cause in the emergency aid context has been abolished.").  If "'reasonable minds may differ, the courts should not second-guess the judgment of experienced law enforcement officers concerning the risks of a particular situation." *Blount*, 123 F.3d at 838.  The Fifth Circuit, however, has "declined to apply the emergency aid exception absent strong evidence of an emergency at the

scene or an imminent need for medical attention." *Linicomn v. Hill*, 902 F.3d 529, 536 (5th Cir. 2018).

In *Cox*, the court found an objectively reasonable basis for believing that a woman was inside the home in need of immediate aid where officers received multiple 911 calls that a woman was dragged into a home and was being held at the residence "zip tied" with suspects who were armed. *Cox*, 2017 WL 5588192, at *3. The officers knocked at the door and two men answered the door and were temporarily detained while a search of the home was made for the woman. *Id.* A woman was not found, but several guns and drugs were seen in plain view, so a search warrant was obtained to again enter the house and seize those items. *Id.* The court denied the defendant's motion to suppress finding that the officer's testimony regarding the emergency aid exception credible and reasonable. *Id.*

In *Brown*, officers were dispatched to a different location regarding a domestic disturbance then given a new location of where the suspect/defendant would be located. *Brown*, 230 F. Supp. 3d at 525. Upon arrival at the defendant's location, the officers could see into the house through the carport door, but saw no signs of a struggle, did not observe any movement or people inside the house, did not hear anyone talking, the defendant did not appear to have been in a fight or confrontation of any kind, and the officer testified that there was "no telling . . . what happened." *Id.* The court found there was no objective reasonable basis for believing that a person within the home was in need of immediate aid. *Id.*

In this case, the officers testified that the door to the home was cracked open, they could see a coffee table with broken legs and broken glass[1], and the Defendant had some small scrapes/scratches on his body. The Government alleges that these facts led to a concern that the

---

[1] This fact regarding the broken coffee table was not noted in the probable cause affidavit for the later warrant sought. It appears to have been raised for the first time at the suppression hearing.

Defendant may have been in an altercation with someone still in the home who may require aid. The body camera footage introduced at the hearing, however, clearly indicates that officers thought the Defendant was high on PCP given his behavior, smell, and state of undress. The 911 caller and witness located at the scene where the Defendant was found reported that he saw the Defendant fall down at the intersection. In addition, the video shows the Defendant thrashing around on the ground and pavement, which likely left scrapes on the Defendant's body. Bell testified that the Defendant did not have any major wounds or physical trauma and there was no information as to anyone else being inside the home. Moreover, according to the body camera footage, officers never reported to EMS that they believed the Defendant had been assaulted or had been involved in a physical altercation.

The fact most favorable to the Government is the broken coffee table. In *Brown*, the court noted that the interior of the home appeared to be a peaceful scene. *Id.* In contrast, that was not the case here. Thus, the court must consider whether the broken coffee table, coupled with a few minor scratches on the Defendant, is enough to satisfy an objectively reasonable basis to enter to render aid to someone "possibly" inside the home who might have been "seriously injured."

As noted above, the Fifth Circuit has "declined to apply the emergency aid exception absent strong evidence of an emergency at the scene or an imminent need for medical attention." *Linicomn*, 902 F.3d at 536. Here, although the Defendant was in need of emergency attention due to his behavior, he was not located at the scene (home) where the warrantless search was conducted pursuant to this emergency exception. Instead, the officers walked to the Defendant's home and entered the home based upon a broken coffee table. Bell stated that the table had one side with broken legs and there was broken glass but there was also still a pile of items on the table. She also conceded it was possible that the Defendant may have fallen on the table and left the home

11

without shutting the door behind him.  Interestingly, the broken coffee table is never mentioned in the video footage of the knock/announce and sweep of the home or Bell's numerous recounts to other officers about what she saw and why she entered.  It also was not mentioned in the probable cause affidavit that she drafted.  The video footage shows a very messy room through the door crack with things piled up, on, and around the table.  It is unclear from the video that the table is broken.

The undersigned finds that these facts do not support an objectively reasonable basis that there was another person in the Defendant's home that needed immediate aid.  The scratches on the Defendant were consistent with his fall and rolling around on the grass and pavement, and the broken coffee table was consistent with either the general messy state of the inside and outside of his home or more likely, the Defendant's alleged state of intoxication and imbalance as he had previously fallen in front of neighbors and also was extremely unstable on the police body camera footage.  The video of the Defendant is not indicative of a man who was involved in a fight with someone.  The court finds the totality of these circumstances did not present the requisite strong evidence of the objective emergency necessary for this exception. As such, the government cannot rely on the emergency-aid exception to justify the warrantless entry into the Defendant's home.

D.    Protective Sweep

A "protective sweep" is "a quick and limited search of a premises, incident to an arrest and conducted to protect the safety of police officers or others."  *Maryland v. Buie*, 494 U.S. 325, 327 (1990).  While normally done incident to an arrest, the Fifth Circuit has held that the absence of an arrest does not preclude a protective sweep, even in a defendant's home, if other circumstances implicate danger to the officers.  *See United States v. Gould,* 364 F.3d 578, 584–86 (5th Cir.2004), *abrogated on other grounds by Kentucky v. King,* 563 U.S. 452 (2011).

"In order for a protective sweep to be constitutionally valid, (1) the police must not have entered (or remained in) the home illegally and their presence within it must be for a legitimate law enforcement purpose; (2) the protective sweep must be supported by a reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger to those on the scene; (3) the legitimate protective sweep may not be a full search but may be no more than a cursory inspection of those spaces where a person may be found; and (4) the protective sweep may last no longer than is necessary to dispel the reasonable suspicion of danger, and no longer than the police are justified in remaining on the premises." *United States v. Fuentes*, No. 4:11-CR-118, 2011 WL 7169215, at *5 (E.D. Tex. Nov. 10, 2011), *R. & R. adopted*, 2012 WL 405458 (E.D. Tex. Feb. 8, 2012).  "Probable cause is not required for a protective sweep, only a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the scene." *United States v. Lozano,* No. 21-50391, 2022 WL 2187859, at *1 (5th Cir. June 17, 2022) (citing *Buie*, 494 U.S. at 334).  However, as noted, the first element requires a legal purpose for being in the home, such as exigent circumstances or an arrest.

For the first element, exigent circumstances can justify law enforcement's legal presence in the home if there was a warrantless entry.  *Id.*  As discussed above, however, the Government did not meet its burden in showing an exigent circumstance or an exception to the warrant requirement allowing them to legally enter the Defendant's home.  Further, the officers did not arrest the Defendant, and even if they had, he was not at his home or even adjacent to his property.  Moreover, "the mere presence of illegal drugs and weapons does not justify a protective sweep." *United States v. Menchaca-Castruita*, 587 F.3d 283, 294 (5th Cir. 2009) (quoting *United States v. Watson*, 273 F.3d 599, 603 (5th Cir.2001)).

The second element requiring a reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger to those on the scene is also not met in this case. In *Menchaca-Castruita*, the Fifth Circuit addressed a similar situation where a landlord contacted the police regarding a dispute with their tenant wherein the landlord had entered the tenant's home and discovered marijuana. *Menchaca-Castruita*, 587 F.3d at 292. The tenant threatened the landlord's wife with a tire iron then fled scene prior to the officer arriving to the home. *Id.* The court noted that there was no specific evidence of anyone in the home; the front door to the residence had been left open indicating a hasty retreat as well as an unsecured premises, which is inconsistent with the probability of additional occupants; there were no sounds coming from inside the residence to suggest that someone might have remained behind; and the officers were safely outside of the residence and all bystanders were even further removed. *Id.* The court reversed the conviction finding the trial court erred in denying the defendant's motion to suppress stating, "there will always be some *possibility* that an unknown person might be hiding somewhere inside a residence, waiting for an opportunity to attack law enforcement officers or to destroy evidence. A finding of exigent circumstances, however, must be based on more than a *mere possibility*; it must be based on an officer's reasonable belief that the delay necessary to obtain a warrant will facilitate the destruction or removal of evidence or put officers or bystanders in danger." *Id.* at 295-296 (emphasis added). The court also stated that, "[i]f anything, the officers increased the potential danger to themselves and the bystanders when they proceeded to enter the residence." *Id.*

Likewise, in *Brown*, the court found no grounds for a protective sweep where the officers had no information of an accomplice or that a dangerous person was present in the home, they saw no movement or persons in the house, and did not hear anyone talking. *Brown*, 230 F. Supp. 3d at 526-27. Consequently, the court found the officers lacked "a reasonable, articulable suspicion that

the area to be swept harbored an individual posing a danger to those on the scene," and thus a protective sweep of the residence was not justified and therefore unreasonable. *Id.*

Like the above cases, the officers here did not have a reasonable articulable suspicion that there was anyone in the Defendant's home that posed a danger to them or anyone else. The officers in this case testified to only a *possibility* of someone being in the home and a *possibility* that the Defendant fought with someone based upon some minor scratches to his body. The undersigned finds that the protective sweep in this case was based on unfounded suspicions and was therefore unconstitutional. Next, the court must turn to whether the officers were justified in relying on the information they obtained from the unlawful entry into the Defendant's home in applying for and executing the search warrant later obtained.

> ### E.    Exclusionary Rule and the Good Faith Exception

The exclusionary rule "precludes the use of evidence obtained from an unconstitutional search or seizure[ ] in order 'to safeguard Fourth Amendment rights.'" *United States v. Beverly*, 943 F.3d 225, 232 (5th Cir. 2019) (quoting *United States v. Leon*, 468 U.S. 897, 906 (1984)). "[T]he exclusionary rule reaches not only the evidence uncovered as a direct violation, but also evidence indirectly derived from it—so called fruit of the poisonous tree." *United States v. Mendez*, 885 F.3d 899 (5th Cir. 2018). The burden is on the government to demonstrate why the exclusionary rule should not apply where there are fruits of an illegal search or seizure at play. *United States v. Reddick*, No. 2:16-CR-928, 2017 WL 1353803, at *4 (S.D. Tex. Apr. 13, 2017), *aff'd,* 900 F.3d 636 (5th Cir. 2018) (citing *United States v. Houltin*, 566 F.2d 1027, 1031 (5th Cir. 1978)).

One exception to the exclusionary rule is where an officer executing the warrant relied upon it in "good faith." *United States v. Leon*, 468 U.S. 897, 911 (1984). The good faith exception

applies when "government investigators acted with an objectively reasonable good-faith belief that their conduct was lawful." *Beverly*, 943 F.3d at 232. "The U.S. Supreme Court fashioned the good faith exception for a reason, as there are times when exclusion is not appropriate because there is a dissipation of taint, and the detrimental consequences of illegal police action becomes so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost." *Leon*, 468 U.S. at 911.

In *Massi,* the Fifth Circuit held that evidence seized pursuant to a warrant is admissible—even if the warrant was the product of an illegal search—if two requirements are met: (1) the prior law enforcement conduct that uncovered evidence used in the affidavit for the warrant must be "close enough to the line of validity" that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by unconstitutional conduct, and (2) the resulting search warrant must have been sought and executed by a law enforcement officer in good faith as prescribed by *Leon. United States v. Massi*, 761 F.3d 512, 528 (5th Cir. 2014). In reaching this decision, the court adopted the Sixth Circuit's reasoning in the *McClain* case.[2] *Id.*

In *McClain,* a neighbor called regarding a light on in a house that was allegedly unoccupied. *United States v. McClain*, 444 F.3d 556, 564-566 (6th Cir. 1996). The officers discovered an open door upon arrival and entered the house to check for intruders but instead found a marijuana growing operation. *Id.* at 560. The Sixth Circuit found this was an unconstitutional entry into the house but applied the good faith exception to permit the admissibility of the evidence obtained through the later search warrant. *Id.* The court noted that the officers were objectively

---

[2] The Ninth and Eleventh Circuits hold the contrary view that the good faith exception does not apply where a search warrant is issued on the basis of evidence that is fruit of the poisonous tree. *See United States v. McGough*, 412 F.3d 1232, 1239–40 (11th Cir. 2005); *United States v. Vasey*, 834 F.2d 782, 789–90 (9th Cir. 1987).

reasonable in believing criminal activity was afoot, there was no evidence that the officers knew they were violating the Fourth Amendment, and "importantly, the officers who sought and executed the search warrants were not the same officers who performed the initial warrantless search, and the warrant affidavit fully disclosed to a neutral and detached magistrate the circumstances surrounding the initial warrantless search." *Id.*

In adopting *McClain* in *Massi*, the Fifth Circuit declined to create a requirement (despite the dissent's insistence) that the officers who engaged in the prior unlawful conduct be different than the officers who acquire and execute the warrant. *Massi*, 761 F.3d at 528. There, the same officer that sought and executed the search warrant also participated in the unconstitutional arrest/seizure of the defendant. *Id.* Despite this fact, the court stated, "[w]hat is important is that the officer presenting the information to a magistrate be objectively reasonable in concluding that the information being used to support the warrant was not tainted. It is not awareness of the existence of the conduct that later is found to be improper that is important, but awareness at the time of presenting the affidavit that the conduct violated constitutional rights that would affect the application of the good faith exception." *Id.* The court further asserted that it must "analyze whether an objectively reasonable officer who assumed a role in an ongoing investigation, obtained a search warrant, and executed that search warrant would have been aware of the constitutional invalidity of this detention." *Id.* In applying the two factors, the court found that the defendant's prolonged detention was "close enough to the line of validity" that an objectively reasonable officer preparing the affidavit would believe in the validity of the prior conduct. *Id.* at 529. The court also noted that evidence that was relied upon in the affidavit was uncovered prior to the defendant's unlawful detainment, so the poisoned tree of improper law enforcement did not cause the discovery of the evidentiary fruit listed in the affidavit. *Id.*

17

In *Brown*, briefly discussed in the previous section, a Louisiana District Court applied the two factors in a case involving an unlawful entry into a house and later search warrant supported by facts learned after that entry. *Brown*, 230 F. Supp. 3d at 531. The officer in *Brown* arrived at the scene less than an hour after the unlawful search of the house and later prepared the search warrant. *Id.* He knew from the officers on the scene that there was a report of domestic disturbance, officers were there to make contact with the defendant, they knocked and spoke with him, they knew he did not live there, a friend may be in the house, they smelled marijuana, and they performed a protective sweep of the house after later suspecting a robbery was afoot despite not seeing evidence of that through the cracked door. *Id.* The court found that an objectively reasonable officer would not have believed that the officers were responding to an active disturbance, or that they were concerned about a victim that might be located inside the house, or that there were any exigent circumstances connected to the alleged domestic disturbance or alleged burglary justifying a warrantless entry. *Id.* at 532. Instead, the court found that an objectively reasonable officer would have been aware of the longstanding constitutional principle that officers cannot make a warrantless entry into a home without exigent circumstances, and the warrantless entry into the home did not even approach the line of validity. *Id.* at 532-533. The court also found that the second factor was not met because the officer omitted the following facts: that they suspected a burglary, they were there to make contact with the defendant, and that the defendant stated that his friend was in the house. *Id.* at 533. Therefore, the court found the good faith exception did not apply and granted the defendant's motion to suppress. *Id.*

Here, like the *Brown* case, Bell conducted the illegal entry into the Defendant's home and also drafted the probable cause affidavit. In addition, Bell executed the search warrant. Although the Fifth Circuit in *Massi* found this is not a determining factor, it stated that a court must analyze

18

whether an objectively reasonable officer who made the investigation, obtained the warrant, and then executed the warrant would have been aware of the constitutional invalidity of the search and/or seizure. *Massi*, 761 F.3d at 528. Here, the undersigned finds that an objectively reasonable officer would not have believed there was probable cause and an exigent circumstance justifying their entry into the house. In addition, an objectively reasonable officer would not have believed that the emergency aid exception applied where the Defendant was found away from his home and there was no evidence presented to believe that anyone was inside the Defendant's home.

Finally, an objectively reasonable officer would not have believed that doing a protective sweep was valid where there was no legal basis for their entry into the home and no reasonable, articulable suspicion that anyone was posing a danger to them in the home. In fact, it was more dangerous for them to enter the home since it was not a part of the medical emergency for which they were called.

Witnesses saw the Defendant fall and there was no report from any of the witnesses or bystanders of another person being involved with the Defendant or fleeing from his home. The Defendant was not at his home. A neighbor told the officers that the Defendant lived at the home with the black truck down the street. Noyola recognized the black truck as belonging to the Defendant, so he went to the Defendant's home, checked the truck parked near the door to the home and ran the license plate. After inspecting all around the Defendant's vehicle in the driveway, he saw the cracked open door to the home. Noyola then radioed Bell informing her of the cracked open door. Bell and Noyola then knocked and announced then swept the home. These facts are not suggestive of there being any known suspects or dangers present.

Instead of the conclusory justifications asserted by the officers in this case, an objectively reasonable officer would have believed, based upon the following facts at the scene, that the

Defendant was high on PCP and stumbled out of his messy home in an intoxicated state: the 911 medical/welfare call; the Defendant fell down and was thrashing around on the ground and pavement causing small scrapes; the Defendant was not responding verbally; the Defendant smelled like PCP; the Defendant was not located at his home, there was no answer at the door when the officers knocked; and there was no movement or noise detected through the cracked door.  Consequently, the court finds that an objectively reasonable officer preparing this affidavit or executing the warrant would not have believed that the information supporting the warrant was not tainted and therefore the evidence supporting the search was not close enough to the line of validity, which fails the first requirement announced in *Massi*.

As to the second requirement—whether the warrant was sought and executed in good faith pursuant to *Leon*—the Supreme Court has announced four situations in which the good faith exception does *not* apply:

> (1) When the issuing [judge] was misled by information in an affidavit that the affiant knew or reasonably should have known was false; (2) When the issuing [judge] wholly abandoned his judicial role; (3) When the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable; and (4) When the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

*Beverly*, 943 F.3d at 232–33.  In *Massi,* the court found that when a search warrant is based on a constitutional violation, the court should consider these facts as a corollary to the first situation—whether the affiant mislead the magistrate who signed the warrant.  *United States v. Massi*, 761 F.3d 512, 526 (5th Cir. 2014).

The undersigned finds the *Brown* case instructive on this issue.  The court in *Brown* found that the good faith exception failed under the first situation because the officer preparing the affidavit omitted certain facts that had the collective effect of misrepresenting to the magistrate the

course of the investigation thereby making the magistrate unaware of the constitutional violation. *Brown* 230 F. Supp. 3d at 533-535. There, the officer failed to disclose: the purpose of making contact with the defendant, that they believed burglary was afoot because of splinters and cracks in the door frame, and that the defendant told them his friend may have been inside. *Id.*

Here, Bell did not mention in the affidavit that she was dispatched to the scene for a "medical call." She also did not say that a witness at the scene reported seeing the Defendant fall down. In addition, she did not mention PCP in the affidavit at all. Her body camera footage indicated that she and Key both stated that the Defendant smelled like PCP and that they thought he was super high, and it was an illegal narcotic drug overdose. The affidavit only mentions that it was *unclear* if he was assaulted or under the influence of narcotics. In addition, the affidavit does not mention that the officers knocked on the door and there was no answer prior to entering. It also does not state that the officers viewed a broken coffee table through the crack in the door. Instead, this information seems to be a fact later noticed and put forth at the hearing to justify entry into the home. In fact, the video footage indicates that as soon as Noyola reported the cracked open door to Bell, he stated to dispatch that they were going to "clear the residence" prior to arriving back to the home with Bell and prior to her viewing anything through the cracked door. Bell also stated she needed to change her gloves on the way to the house because she did not want to get blood on her weapon, suggesting she intended to enter the home before ever seeing the broken table. The affidavit only states that, "for safety, and to ensure there were no suspects hiding or further victims in need of immediate medical attention, the deputy and I made entry to the residence through the open door."

Also, interesting to note, after entering the home, but prior to obtaining the search warrant, Bell's body camera footage indicates that the Defendant seized and aspirated. In addition, she

states multiple times on the video that the Defendant had burns around his lips indicating PCP use and that the smell of PCP on his person was "so strong." None of these facts were provided in the affidavit to obtain the warrant. This suggests that Bell was downplaying the evidence of drug use, which seems to be the most glaring reason as to why the officers entered the home to search, aside from the door being cracked open.

"The judge's role at a suppression hearing is to determine the credibility of witnesses and find the facts." *United States v. Jones*, 187 F. Supp. 3d 714, 723 (M.D. La. 2016). "At a suppression hearing, it is well within the trial court's discretion to weigh the evidence and make credibility determinations regarding conflicting testimony." *Id.* The undersigned finds that if the above omitted facts were included in the affidavit, the magistrate in this case would have been aware of the constitutional violation that took place as a result of the officer's warrantless entry.

The Government has failed in proving an exception to the warrant requirement for the first entry into the home and also failed to show the two requirements necessary for finding the warrant valid despite the prior illegal entry. Therefore, the evidence seized pursuant to the search warrant is inadmissible and the suppression of this evidence serves the interest of deterring future constitutional violations.

## IV. <u>RECOMMENDATION</u>

The undersigned recommends that the Defendant's Amended Motion to Suppress (doc. #48) should be granted and that all evidence seized as a result of this constitutional violation should be suppressed.

## V. <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing,

(2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(2); E.D. TEX. LOCAL R. CR-59(c). A party who objects to this Report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 15th day of September, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE